**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| CHERYL HANSON, | : | Case No. 3:17-cv-382 |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Cheryl Hanson brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, Widow's Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #9), Plaintiff's Reply (Doc. #10), and the administrative record (Doc. #6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm the Administrative Law Judge's non-disability decision.

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

## II. **Background**

Plaintiff applied for benefits on May 30, 2014, asserting that she has been under a "disability" since October 23, 2008. But these were not her first applications. She filed previous applications for benefits in July 2009, alleging the same onset date—all of which were denied by the Social Security Administration. After a hearing, on July 7, 2011, Administrative Law Judge (ALJ) William M. Manico found she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act. The Appeals Council upheld his decision, and she did not file a complaint with the United States District Court. Accordingly, ALJ Manico's decision became final on July 7, 2011.

Because of Plaintiff's previous applications for benefits (and resulting denial), in the present case, the period of time between Plaintiff's alleged onset date and the previous ALJ's final decision was not reconsidered. Instead, ALJ Benjamin Chaykin considered Plaintiff's disability status beginning on July 8, 2011. And like ALJ Manico, after a hearing, ALJ Chaykin concluded that she was not disabled and therefore not eligible for benefits.

In July 2011, Plaintiff was forty-seven years old and was therefore considered a "younger person" under Social Security Regulations. After a few birthdays, she changed age categories and is thus considered a person "closely approaching advanced age." *See* 20 C.F.R. §§ 404.1563(c), (d), 416.963(c), (d). She has an eighth-grade education—or,

in Social Security jargon, a limited education. *See* 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3). [2]

A.   **Plaintiff's Testimony**

Plaintiff testified at the hearing before ALJ Chaykin that she has "a lot of breathing problems"—specifically, asthma and COPD. (Doc. #6, *PageID* #s 105, 108). She uses multiple inhalers and a nebulizer. *Id*. Even with medication, her asthma affects her in the heat, when she walks up or down stairs, and when she has to do something stressful or that takes a lot of work. *Id.* at 109. Although she is aware it is bad for her, she smokes almost a pack of cigarettes a day. *Id.* at 117.

Plaintiff has hip and leg pain as the result of injuries she sustained in a car accident more than ten years before the hearing. *Id.* at 105-07. She had surgery and has a metal plate in her hip and a metal rod in her leg. *Id.* A few years before the hearing, her pain increased ("As times went on it's got worse and worse."). *Id.* at 107-08. Because of the pain, it is difficult for her to lift anything; she thinks the most she can lift is ten pounds. *Id.* at 105, 110. She cannot walk as far and cannot crouch. *Id.* at 108. She "can't even put [her] pants on without it hurting to stand on one leg to put [her] pants on [her] bad side." *Id.* She takes medication for pain and it helps. *Id.* at 105-06. However, her doctor, Dr. Vasler, plans to take her off the pain medication to try alternative treatments. *Id.* at 108.

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

3

Plaintiff struggles with depression. Unfortunately, between 2012 and January 2014 she was not able to afford any psychological treatment or medications because she did not have insurance. *Id.* at 106. At the time of the hearing, she had been seeing her psychiatrist, Dr. MacNealy, for over a year. *Id.* at 110. She tried several medications, for example, Seroquel and trazadone, but she could not take them because they interacted with her breathing medication. *Id*. At the time of the hearing, she was taking Lithium. *Id*. But even with the medicine, she has a difficult time going outside and gets depressed. *Id.* at 111. If she has an appointment, then she is able to "get cleaned up." *Id*. Otherwise, she goes three to four days without taking a shower. *Id*.

Plaintiff has problems with concentration and memory—like forgetting she had a telephone conversation. *Id*. When she was working, she struggled with memory issues. For example, a week after being trained on how to do something, she could not remember how to do it. *Id.* at 112.

Further, Plaintiff does not get along with other people very well. People have hurt her in past and to prevent getting hurt again, she avoids them. She explained, "it's very hard for people to understand when you're having so much anxiety and you're scared to go anywhere because you're afraid if you walk out your door somebody might hurt you, they might harm you." *Id*. at 113.

On a typical day, Plaintiff wakes up, makes coffee, and then watches TV. *Id.* at 103. She sometimes goes grocery shopping. *Id.* at 104. But she gets paranoid and feels like people are staring at her and talking about her. *Id*. She has not had a driver's license since she was thirty years old. *Id.* at 101. Plaintiff last worked in 2012 or 2013 at a

plastics factory. *Id.* at 102. She left after three months because she could not keep up with her job and had crying spells. *Id*.

Plaintiff lives with a friend who helps her with chores. *Id.* at 101. For instance, he takes her laundry downstairs for her and brings it back up. *Id*. Plaintiff does the dishes and tries to vacuum. *Id.* at 103-04. She has to take breaks while vacuuming because it hurts her back to bend over. *Id.* at 104. She also has a hard time dusting because of her back. *Id*.

### III. **Standard of Review**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record

5

contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. <u>The ALJ's Decision</u>

As noted previously, it fell to ALJ Chaykin to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since July 8, 2011.

Step 2: She has the severe impairments of lumbar spine degenerative disc disease with scoliosis, history of right hip injury with surgical repair, personality disorder, anxiety disorder, post traumatic stress disorder, bipolar disorder, and chronic obstructive pulmonary disease.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work …" with many exceptions. Specifically, she can

- occasionally lift and/or carry, including upward pulling, twenty pounds;
- frequently lift and/or carry, including upward pulling, ten pounds;
- push and/or pull, including operation of hand and/or foot controls unlimited, other than as shown for lift and/or carry;
- stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday;
- sit with normal breaks for a total of about six hours in an eight-hour workday;
- occasionally climb ladders, ropes, scaffolds, ramps, and stairs;
- occasionally balance, stoop, kneel, crouch, and crawl;
- have no concentrated exposure to dusts, odors, fumes, or other pulmonary irritants;
- avoid all exposure to hazards such as machinery, heights, etc.;
- occasional interaction with supervisors, coworkers, and the public;
- not perform teamwork or tandem tasks;
- perform simple tasks but not at a production rate pace or strict quota;
- work in a static environment with few changes in the work setting.

Step 4: She has no past relevant work.

Step 5: She could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 75-90). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 90.

## V. Discussion

Plaintiff contends that the ALJ erred in evaluating her treating source's opinion and her credibility/symptom severity. The Commissioner maintains that substantial evidence supports the ALJ's decision.

### A. Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

8

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the ALJ's reasons. *Id*.

In the present case, Dr. MacNealy, Plaintiff's treating psychiatrist, completed an impairment questionnaire in July 2016. He diagnosed panic attacks, anxiety, and depression. (Doc. #6, *PageID* #971). He indicated that Plaintiff has many signs and symptoms, including, for example, poor memory, recurrent panic attacks, paranoia or inappropriate suspiciousness, and intrusive recollections of a traumatic experience. *Id*. Dr. MacNealy opined that she would be absent from work more than three times per month because of her impairments or treatment. *Id.* at 972. Further, she would be distracted more than two-thirds of the time. *Id.* at 972-73. He concluded that Plaintiff would not be able to perform full-time employment. *Id.* at 973.

ALJ Chaykin assigned Dr. MacNealy's opinion "little weight." *Id.* at 88. In reaching this conclusion, the ALJ did not specifically acknowledge the treating physician rule. He did indicate that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p"—albeit much earlier in his decision. *Id.* at 83.

Nonetheless, the ALJ correctly recognized that Dr. MacNealy began treating Plaintiff in September 2014 and saw her on a monthly basis. *Id.* at 85; *see also* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."). Given this, the ALJ understood that Dr. MacNealy was Plaintiff's treating psychiatrist.

Further, the ALJ provided three primary reasons for the weight he assigned Dr. MacNealy's opinions. First, "Dr. MacNealy's opinion provides little explanation and/or specific functional limitations." (Doc. #6, *PageID* #88). This is correct. Dr. MacNealy provided no explanation for his opinions that Plaintiff would be absent from work more than three times a month and would be distracted for two-thirds of an eight-hour day. "Conclusory statements from physicians are properly discounted by ALJs." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009) (citing *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Thus, this constitutes a good reason for discounting Dr. MacNealy's opinion. *See* 20 C.F.R. § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

Turning to the second reason, the ALJ found Dr. MacNealy's opinions to be "inconsistent with the medical evidence of record which does not show frequent reports of panic attacks." (Doc. #6, *PageID* #88). The ALJ is correct again; the record has very few reports regarding panic attacks. And, the record shows that medication helped Plaintiff's panic attacks. Specifically, Dr. MacNealy noted in September and October

2014, "pt. advised re: AZL. medication is helping with anxiety/panic attacks." *Id.* at 572, 575.

Last, the ALJ discounted Dr. MacNealy's opinion because it "is inconsistent with majority of his examinations where he consistently found the claimant's speech was normal, her thought process was goal directed, her behavior was cooperative, and she was oriented to time, place, and person. *Id.* at 88 (internal citation omitted). Plaintiff disagrees. She argues that the ALJ's conclusion is not supported by substantial evidence and points to a few of Dr. MacNealy's notes, his diagnoses, and GAF scores.

Although Plaintiff is correct that some of Dr. MacNealy's notes indicate her speech was trembling, she was obviously scared, and she was terrified/angry, *id.* at 551, 960, 962, the ALJ accurately observed that the *majority* of his notes indicated Plaintiff's speech was normal, her thought process was goal directed, and her behavior was cooperative. *Id.* at 553, 564, 566, 568, 570, 572, 580, 584.

Plaintiff is likewise correct that Dr. MacNealy noted diagnoses of Bipolar I Disorder, PTSD, and "probable" ADHD. However, this does not advance Plaintiff's case because a treating physician's diagnosis is not determinative of the ultimate disability determination under the Social Security Act. *See Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986); *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988) ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition."); *see also* 20 C.F.R. § 404.1527(e)(1).

Further, as Plaintiff observed, the record reveals that physicians assigned her GAF scores of 45 and 50. However, ALJ Chaykin addressed GAF scores separately. He

explained that they are of "limited evidentiary value" because they are "subjectively assessed" and "only snapshots of impaired and improved behavior." (Doc. #6, *PageID* #88). Substantial evidence supports the ALJ's conclusion. Indeed, the fifth and most recent edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5) has dropped the GAF. "DSM-5 explains that the GAF was excluded for several reasons, among which were its lack of conceptual clarity (*i.e.*, including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." DSM-5 and the Assessment of Functioning: The World Health Organization Disability Assessment Schedule 2.0, J. AM ACAD. PSYCHIATRY AND LAW, 42: 2: 173-181 (June 2014) (footnote omitted) (available at http://www.jaapl.org. Search by article title). Further, "the Commissioner 'has declined to endorse the [Global Assessment Functioning] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [Global Assessment Functioning] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *DeBoard v. Comm'r of Soc. Sec.,* 211 Fed. App'x 411, 415 (6th Cir. 2006) (quoting *Wind v. Barnhart,* No. 04–16371, 2005 WL 1317040, at *6 n. 5, 133 Fed. Appx. 684 (11th Cir. June 2, 2005); and 65 Fed. Reg. 50746, 50764–65 (Aug. 21, 2000)).

    In sum, ALJ Chaykin provided good reasons, supported by substantial evidence, for assigning Dr. MacNealy's opinion little weight.

B.  **Symptom Severity**

Plaintiff contends that the ALJ erred in evaluating her credibility[3] and symptom severity. Specifically, he failed to list the regulatory factors identified in Social Security Ruling 16-3p and failed to evaluate the evidence against most of the factors. Instead, according to Plaintiff, the ALJ discounted Plaintiff's mental health-complaints because she was able to perform some sporadic activities of daily living.

Although Plaintiff is correct that the ALJ did not specifically cite Ruling 16-3p, he did indicate that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p."[4] (Doc. #6, *PageID* #83). The ALJ also set forth the correct legal criteria for evaluating an individual's symptoms according to 20 C.F.R. §404.1529.

The Social Security Administration uses a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether an individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. Soc. Sec. R. 16-3p, 2016 WL 1119029, *3 (March 16, 2016). Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which the individual's symptoms limit her ability to perform

---

[3] In March 2016, the Social Security Administration eliminated its use of the term "credibility" and clarified "that subjective symptom evaluation is not an examination of an individual's character...." Soc. Sec. R. 16-3p, 2016 WL 1119029, *1 (March 16, 2016), *republished for clarification*, 2017 WL 5180304 (Oct. 25, 2017).

[4] Social Security Ruling 96-4p was rescinded by Fed. Reg., Vol. 83, No. 115, p. 27816, effective June 14, 2018. At the time of ALJ Chaykin's decision, Social Security Ruling 96-4p was still in effect.

work-related activities.  *Id.* at *4.  To do this, the ALJ must examine the entire case record, including the objective medical evidence; the individual's relevant statements; statements and other information provided by medical sources and others; and any other relevant evidence in the record.  *Id.* at *4.  The ALJ should also consider several factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *7; *see also* 20 C.F.R. § 404.1529(c)(3).  The Administration stresses that it "will consider other evidence to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms."  *Id.* at *7.  And if there is no evidence regarding one of the factors, that factor will not be discussed.  *Id.*

In the present case, ALJ Chaykin followed these steps.  He first determined that Plaintiff has medically determinable impairments that could reasonably be expected to cause her alleged symptoms.  Her severe impairments include lumbar-spine degenerative disc disease with scoliosis, history of right-hip injury with surgical repair, personality disorder, anxiety disorder, post-traumatic stress disorder, bipolar disorder, and chronic-obstructive pulmonary disease.

14

Turning to step two, ALJ Chaykin found that the objective findings in the record "fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (Doc. #6, *PageID* #83). He then discussed the medical evidence related to Plaintiff's physical and mental impairments.[5] For instance, the ALJ observed that when Plaintiff presented to J.P. Gentile, M.D. for an initial psychiatric evaluation, she reported that she had been on psychiatric medications for most of her life but had not been using them for two years. *Id.* at 85 (citations omitted). Dr. Flexman, a consulting psychologist who examined Plaintiff in September 2014, indicated that she reported feelings of helplessness, hopelessness, and worthlessness. However, her thought processes were within normal limits and her affect was appropriate. *Id.* (citations omitted). Dr. MacNealy's notes reveal that in a majority of his examinations Plaintiff's speech was normal, her thought process was goal directed, her behavior was cooperative, and she was oriented to time, place, and person. *Id.* Based on the evidence, ALJ Chaykin concluded that although Plaintiff has physical and mental limitations, those limitations were not disabling and were accounted for in his residual functional capacity assessment.

The ALJ also evaluated Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms and found that they were not entirely consistent with the medical evidence and other evidence in the record. *Id.* at 86. Looking at her mental impairments, the ALJ observed, "the claimant's alleged mental

---

[5] In Plaintiff's Statement of Errors (Doc. #7), she contends that substantial evidence does not support the ALJ's symptom-severity analysis of her *mental* impairments. She does not identify any errors in the ALJ's analysis of the symptom severity of her physical impairments.

15

limitations are not supported [by] her activities of daily living which have included preparing meals, doing laundry, washing dishes, vacuuming, sweeping, and general straightening around the house." *Id.* (citation omitted).

Plaintiff insists, "while the ALJ was correct in taking [her] activities into consideration, '[t]he failure to recognize [the differences between activities of daily living and work activities] is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.'" (Doc. #7, *PageID* #983) (alterations in original) (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (other citations omitted)).

In this case, ALJ Chaykin did not compare Plaintiff's activities of daily living with her ability to do work activities; he compared her actual activities of daily living to her alleged disabling mental limitations. In other words, the ALJ did not indicate that because Plaintiff is able to make coffee and vacuum, she is able to sustain fulltime employment. Instead, the ALJ found that her activities of daily living do not support her alleged disabling mental limitations. He discussed Plaintiff's activities of daily living in more detail earlier in his decision. Specifically, he found that her mental impairments, considered singly or in combination, do not meet or medically equal the criteria of the relevant listings. To reach this conclusion, he considered whether her mental impairments satisfied "paragraph B" criteria. Noting that Plaintiff was able to perform several activities—such as taking care of her personal needs, washing dishes, vacuuming, doing laundry—the ALJ concluded that Plaintiff has a mild limitation in activities of daily living.

ALJ Chaykin evaluated Plaintiff's symptom severity as set for in the Regulations and Social Security Ruling 16-3p. He reasonably weighed the evidence and concluded Plaintiff is not under a disability. Substantial evidence supports his conclusions. Accordingly, Plaintiff's challenges to the ALJ's symptom-severity determination lack merit.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's non-disability decision be affirmed; and
2. The case be terminated on the Court's docket.

April 8, 2019

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).